NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS
California Bar No. 101281
Assistant United States Attorney
Asset Forfeiture Section
        Federal Courthouse, 14th Floor
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-2569
        Facsimile: (213) 894-0142
        E-mail: Victor.Rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.   2:19-CV-08296 |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR FORFEITURE |
| | ) | |
| v. | ) | 18 U.S.C. § 981(a)(1)(C) and |
| | ) | 21 U.S.C. § 881(a)(6) |
| $100,000.00 IN U.S. | ) | |
| CURRENCY, | ) | [FBI] |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff United States of America brings this claim against defendant $100,000.00 In U.S. Currency, and alleges as follows:

JURISDICTION AND VENUE

1.   Plaintiff United States of America brings this in rem forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

2.      This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1395.

<u>PERSONS AND ENTITIES</u>

4.      The plaintiff in this action is the United States of America.

5.      The defendant in this action is $100,000.00 in U.S. Currency (the "defendant currency") seized by law enforcement officers on or about June 29, 2018 during a traffic stop in Chino Hills, California conducted on the shoulder of Highway 71 near the Pine Street off ramp of a 2003 Honda Civic being operated by and registered to David Zazueta.

6.      The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7.      The interests of David Zazueta, who is also known as David Zazueta Valenzuela may be adversely affected by these proceedings.

<u>BASIS FOR FORFEITURE</u>

8.      At approximately 4:15 a.m. on June 29, 2018, law enforcement officers were traveling on Highway 71 just south of Highway 60 in Chino Hills, California when officers observed a Honda Civic traveling in excess of the speed limit.  After the Honda Civic continued to speed for approximately one mile, officers conducted a traffic stop of the vehicle on the shoulder of Highway 71 near the Pine Street off ramp.

2

9.    Officers approached the Honda Civic and told the driver, whom officers identified as Valenzuela, the reason that officers had stopped the vehicle.  Valenzuela told officers that he understood the reason officers had stopped him (Valenzuela) and acknowledged that he had been driving faster than the speed limit.

10.    Valenzuela told officers that he (Valenzuela) was traveling to work in San Diego.  When officers asked Valenzuela for Valenzuela's driver license, registration and proof of vehicle insurance, Valenzuela provided his driver license, which reflected that Valenzuela resided in Indio, California.  While Valenzuela continued to look for his vehicle registration and proof of insurance documents, officers asked Valenzuela simple questions concerning Valenzuela's travel.

11.    In response to officer queries, Valenzuela stated that he (Valenzuela) was driving to work in San Diego and claimed that he lived in San Diego.  However, and as mentioned above, Valenzuela's license reflected that Valenzuela lived in Indio, not San Diego.

12.    In addition, because Valenzuela eyes were red, Valenzuela looked very tired, and Valenzuela looked as though he had not slept much, which made it appear as though Valenzuela had been driving all night, officers asked Valenzuela how long he (Valenzuela) had been driving that morning.  Valenzuela stated that he had driven that morning from his brother's apartment in Pomona and had traveled the night before from San Diego to Pomona to see his brother graduate from Cal Poly University.  (However, Valenzuela's story was false, because the

3

Cal Poly University graduation ceremony that Valenzuela had allegedly driven to attend had occurred in early June, or weeks before Valenzuela had been stopped by officers).

13. Valenzuela became extremely nervous as he told officers about his travel. Despite having purportedly just traveled from his brother's Pomona apartment, Valenzuela told officers that he was not sure where his brother lived and, when officers inquired about additional details regarding Valenzuela's travel, Valenzuela was unable to provide clear answers to officers about his travel plans.

14. As mentioned above, officers had asked Valenzuela for proof of insurance for the Honda Civic, and Valenzuela was looking for the insurance documents. Valenzuela handed officers what he claimed was the proof of insurance document but, upon inspection, officers saw that Valenzuela had given officers an insurance card for an entirely different vehicle from the Honda Civic that Valenzuela had been driving. Despite officers' additional request therefor, Valenzuela was unable to provide officers with proof of insurance for the Honda Civic.

15. Officers had a narcotic detection canine sniff the exterior of the Honda Civic, and the canine alerted to the rear of the vehicle near the trunk, which signifies that items inside the trunk had recently been in close proximity to narcotics. When officers looked inside the trunk, officers found ten plastic-wrapped, rubber-banded bundles of currency totaling $100,000.00 (i.e., the defendant currency) hidden inside the trunk's lining in the rear right quarter panels of the vehicle, with six bundles in the vehicle's passenger side panel and four

4

bundles in the driver side panel.  The canine alerted to the packages containing the defendant currency.

16.  When officers told Valenzuela that officers had found some items in the Honda Civic's trunk, Valenzuela stated that he knew that there were some packages of money in the trunk that did not belong to him (Valenzuela).  In addition, Valenzuela stated that he did not know who owned those funds.

17.  Valenzuela also told officers the following.  An unknown individual had approached Valenzuela and offered to pay Valenzuela $1,200.00 to drive to Covina to pick up some packages of money and drive the money back to San Diego.  Valenzuela accepted the offer because Valenzuela needed the money. Valenzuela drove to a Walmart parking lot in Covina, where another unknown individual approached Valenzuela and told Valenzuela to wait in the parking lot while the individual took Valenzuela's vehicle for a couple of hours.  After loading the packages of money into Valenzuela's vehicle, the individual returned in the vehicle to the parking lot at about 10:00 p.m. The individual told Valenzuela to wait in the parking lot and leave later that evening.  Valenzuela was supposed to drive to San Diego and take his vehicle somewhere in San Diego.  Once Valenzuela had completed his trip, Valenzuela was to be paid.

18.  In addition, Valenzuela told officers that he suspected that the money in his trunk was illicit proceeds from criminal activity.  Valenzuela was unable to identify any of the individuals with whom he dealt relative to the funds, and reiterated to officers that he did not own any of the funds

officers had found in his trunk and had no idea to whom those funds belonged.

19.  Valenzuela also told officers that the initial statements he made to officers during the traffic stop were lies.  With respect to those false statements, Valenzuela stated that he lied to officers in order to cover up what he was really doing.

20.  In addition to the other narcotic trafficking indicators set forth above, including but not limited to Valenzuela's inconsistent statements to officers, lies to officers, the rubber-banding and bundling of the defendant currency and the narcotic detection canine alert, the defendant currency was also in denominations consistent with narcotic trafficking.  More specifically, the defendant currency consisted of 3,000 twenty dollar bills, 22 fifty dollar bills and 389 one hundred dollar bills.

21.  Furthermore, there are other indicia of narcotic trafficking relative to the defendant currency in that Valenzuela lacked sufficient sources of legal income to justify his ownership of the defendant currency.  Valenzuela told officers that his monthly income was only $3,000.00, while his monthly expenses totaled $1,770.00 (consisting of $650.00 in rent, $50.00 in utilities, $60.00 in cellular telephone expenses, $100.00 in credit card expenses, $350.00 for insurance expenses and $560.00 in gas and food expenses).

22.  In addition, Valenzuela signed a disclaimer of ownership and waiver of notice form, in which Valenzuela explicitly and expressly disclaimed any ownership interest in

the defendant currency.  In connection with the disclaimer
Valenzuela signed, Valenzuela specifically disclaimed,
relinquished, abandoned and waived any rights he had in the
defendant currency, stated that he had no interest in the
defendant currency, and consented to the forfeiture of the
defendant currency.

23.  Notwithstanding the clear and unmistakable terms of
his disclaimer (including his statement that he had no interest
in the defendant currency), Valenzuela signed a statement under
oath that he submitted in the seizing agency administrative
forfeiture proceedings, which typically precede judicial
forfeiture proceedings, averring under oath and in a conclusory
fashion that he has a valid, good faith recognizable interest in
the defendant currency because "his exclusive dominion and
control of the property is all that is required."  However,
Valenzuela proffered no facts to support his conclusory under
oath statement.  In addition, when called upon in his
administrative claim to provide documents that support his
alleged interest in the defendant currency, which Valenzuela
expressly disclaimed in his disclaimer, Valenzuela stated that
he did "not have any supporting documents to include."

24.  As mentioned above, a trained, state-certified
narcotic detection canine alerted to the packages containing the
defendant currency.  The canine was state-certified in or about
May of 2017, and is re-certified annually.  As of the June 29,
2018 alert, the canine had received hundreds of hours of
training (including training after the canine's initial
certification) in the detection of cocaine, methamphetamine,

7

marijuana and heroin, and the canine alerts to the scent of narcotics for which the canine is trained.  The canine's training has included routinely checking both circulated and uncirculated United States currency, in order to ensure that the canine does not alert to the actual odor of currency itself but instead to the odor of controlled substances on the currency. Since the canine's initial certification, the canine has been responsible for the location and seizure of controlled substances and United States currency.

<u>FIRST CLAIM FOR RELIEF</u>

25.  Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

26.  Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking, was intended to be used in one or more exchanges for a controlled substance or listed chemical, or was used or intended to be used to facilitate a controlled substance or listed chemical violation, in violation of 21 U.S.C. § 841 <u>et</u> <u>seq.</u>  The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

<u>SECOND CLAIM FOR RELIEF</u>

27.  Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

28.  Based on the above, plaintiff alleges that the defendant currency constitutes or is derived from proceeds traceable to a controlled substance violation, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and / / /

8

1  1961(1)(D).  The defendant currency is therefore subject to

2  forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

3      WHEREFORE, plaintiff United States of America prays:

4      (a)   that due process issue to enforce the forfeiture of

5  the defendant currency;

6      (b)   that due notice be given to all interested parties to

7  appear and show cause why forfeiture should not be decreed;

8      (c)   that this Court decree forfeiture of the defendant

9  currency to the United States of America for disposition

10 according to law; and

11     (d)   for such other and further relief as this Court may

12 deem just and proper, together with the costs and disbursements

13 of this action.

14 Dated: September 26, 2019      NICOLA T. HANNA
                                  United States Attorney
15                                BRANDON D. FOX
                                  Assistant United states Attorney
16                                Chief, Criminal Division
                                  STEVEN R. WELK
17                                Assistant United States Attorney
                                  Chief, Asset Forfeiture Section
18

19                                _____

20                                VICTOR A. RODGERS
                                  Assistant United States Attorney
21                                Asset Forfeiture Section

22                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA
23

24

25

26

27

28

<pre>
 1                            VERIFICATION
 2        I, David A. Ricker, hereby declare that:
 3        1.   I am a Special Agent with the Federal Bureau of
 4   Investigation.
 5        2.   I have read the above Complaint for Forfeiture and
 6   know the contents thereof.
 7        3.   The information contained in the Complaint is either
 8   known to me personally, was furnished to me by official
 9   government sources, or was obtained pursuant to subpoena.  I am
10   informed and believe that the allegations set out in the
11   Complaint are true.
12        I declare under penalty of perjury under the laws of the
13   United States that the foregoing is true and correct.
14        Executed on September 4, 2019 at Riverside,
15   California.
16                                         David A. Ricker
17
18
19
20
21
22
23
24
25
26
27
28
</pre>

10